# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIERDRA LONDONO,<br><br>　　　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:16-cv-01897-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision of the Commissioner of the Social Security Administration regarding her applications for Supplemental Security Income and Social Security Disability Insurance. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 10, 12).

At the hearing on May 2, 2018, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

The Administrative Law Judge ("ALJ") relied heavily on the residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services. AR at 23. Specifically, the ALJ cited to Exhibit 1A, which is the September 20, 2013 opinion of consultative examiner Dr. Fast, and Exhibit 5A, the January 13, 2014 opinion of Dr. Ikawa. Dr.

1

Ikawa also noted agreement with consultative examiner Nasrabadi, whose opinion was dated January 14, 2014.

Notably, each of these three doctors rested their decision in part on the lack of medical evidence supporting claimant's allegations. AR at 66 ("Allegations are partially credible, but severity not supported per the medical evidence in file."); AR at 88 ("Allegations are partially credible, but severity not supported per the medical evidence in the file."); AR at 98 ("Allegations are partially credible, but severity not supported per the medical evidence in the file.").

Following these examinations, but before the ALJ's decision, the claimant went to the emergency room for complaints of neck pain, numbness, and dizziness. AR at 517 (Claimant "presents to the emergency department for evaluation of ongoing neck pain radiating to the left side with new onset of facial numbness and dizziness today. The pt has two degenerative discs in his C-spine. The pt has chronic pain to all extremities."). A CT scan of Plaintiff's cervical spine revealed "mild to moderate degenerative disc disease with narrowing, greatest posteriorly at C3-4, C4-5 and C6-7. There is mild generalized disc bulging with some calcification of the dis at C5-6. There is accompanying facet degenerative change. There is no significant compromise of spinal canal. . . . Mild to moderate multilevel degenerative disc disease. Mild amount disc bulging at C5-6." AR at 519.

Plaintiff received two MRI's following this emergency room visit, both of which were submitted as part of the record. A May 28, 2014 MRI indicated, among other findings, "At C6-C7, there is a moderate central disc protrusion, probably associated with spurring at the posterior disc margin. This is causing central cord compression. . . . A small lesion is seen within the T2 vertebral body, possibly an atypical benign hemangioma. More significant pathology is not excluded." AR at 524. The MRI dated June 13, 2014, indicated, among other findings, "Multilevel cervical arthropathy and foraminal stenosis which is moderate to severe bilaterally at C4-C5, right side worse than left. Less severe stenosis noted at C3-C4, C5-C6 and C6-C7. There is a broad based disc protrusion at C6-C7 level measuring 3mm. There is a right paracentral C5-C6 disc osteophyte complex measuring to 3mm. . . . No cord compression, canal stenosis or myelopathy." AR at 527.

The ALJ considered these MRIs in the following statement:

> May 2014 MRI of the neck showed moderate C6-C7 central disc protrusion, possibly associated with spurring at the posterior disc margin, causing some central compression of the thecal sac, but only mild central cord compression. Ex. 15F. No significant abnormalities were seen in the soft tissues of the neck. June 2014 radiology report showed some cervical arthropathy and foraminal stenosis, as well as some disc protrusion, but no cord compression, canal stenosis, or myelopathy. Exh. 16F.

AR at 23.

It is undisputed that these MRIs were not available to the consulting examiners. Moreover, no doctor provided guidance to the ALJ regarding their meaning. The Commissioner claims that substantial evidence nevertheless supported the ALJ's findings because the MRIs did not alter the consulting examiners' analyses, as adopted by the ALJ, and in any event it was Plaintiff's burden to put forth an opinion supporting disability based on these MRIs. The Commissioner also notes that the ALJ told Plaintiff she could get a note from her doctor about the MRIs. AR at 58 ("What you could do, if you would want to, is ask the doctor if she's able to prepare a letter for you. You can always send that in to us. It doesn't have to be under oath before a notary, or anything like that. The doctor can always give us her opinion of your ability to do full-time work now, and you can send any type of information to us in this type of hearing."). Plaintiff argues that the ALJ's opinion is not supported by substantial evidence because the consulting examiner's opinions were based on the lack of medical evidence and are not correct in light of this medical evidence. Moreover, Plaintiff argues that the ALJ had a duty to develop the record, especially in light of the fact that Plaintiff was unrepresented.

The Ninth Circuit has stated that the ALJ has a duty to develop the record as follows:

> The ALJ in a social security case has an independent "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.' " *Smolen,* 80 F.3d at 1288 (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir.1983)). This duty extends to the represented as well as to the unrepresented claimant. *Id.* When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts. *Cox v. Califano,* 587 F.2d 988, 991 (9th Cir.1978). In this case, Tonapetyan was represented, but by a lay person rather than an attorney. The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own

3

> interests. *Higbee v. Sullivan,* 975 F.2d 558, 562 (9th Cir.1992). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen,* 80 F.3d at 1288; *Armstrong v. Commissioner of Soc. Sec. Admin.,* 160 F.3d 587, 590 (9th Cir.1998). The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tidwell v. Apfel,* 161 F.3d 599, 602 (9th Cir.1998); *Smolen,* 80 F.3d at 1288.

*Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

The Ninth Circuit has also explained:

> Critical to the fair and effective operation of the system for distributing social security benefits based on disability is the gathering and presentation of medical evidence. The burden of demonstrating a disability lies with the claimant. *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). But it is equally clear that "the ALJ has a duty to assist in developing the record." *Armstrong v. Commissioner of Soc. Sec. Admin.,* 160 F.3d 587, 589 (9th Cir.1998); 20 C.F.R. §§ 404.1512(d)-(f); *id.* at §§ 416.912(d)-(f); *see also Sims v. Apfel,* 530 U.S. 103, 110–11, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits...."). One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination, *i.e.,* "a physical or mental examination or test purchased for [a claimant] at [the Social Security Administration's] request and expense." 20 C.F.R. §§ 404.1519, 416.919.

*Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

This Court finds that the ALJ had a duty to develop the record in this case, and erred in failing to do so. The tests done at the emergency room and subsequent MRIs were relevant evidence to assessing one of the impairments that the ALJ found was severe: Degenerative Disc Disease. That medical evidence called into question the opinions of the state consultative examiners upon which the ALJ relied because they based their opinions in part on the lack of medical evidence to support Plaintiff's allegations. The ALJ's own dismissal of that medical evidence was insufficient and not supported by substantial evidence. The test results used specialized medical terminology that is not readily accessible to a lay opinion. Moreover, although the ALJ cited findings that appeared to indicate a lack of substantial impairment, such as

4

findings that no significant abnormalities were seen in the soft tissues of the neck and that one MRI found no cord compression, there were other findings that suggested more substantial impairments, such as findings of "multilevel cervical arthropathy and foraminal stenosis which is moderate to severe bilaterally at C4-C5," AR at 527, and "central cord compression," AR at 524. The effect of this medical evidence on the assessment of Plaintiff's RFC is ambiguous, warranting additional input from a consultative examiner.

That the ALJ told Plaintiff she could get a doctor's opinion does not change this conclusion. Plaintiff was unrepresented and may not have appreciated that the ALJ could disregard the findings of the medical tests altogether without an opinion from a doctor. Additionally, those medical opinions call into question a basis for the doctors' opinions, and thus the ALJ's own opinion. That concern is not satisfied by telling Plaintiff she has a right to submit a letter from a doctor.

Accordingly, the Court will REVERSE and REMAND with instructions for further administrative proceedings and development of the record consistent with this disposition.[1]

IT IS SO ORDERED.

Dated: **May 3, 2018**     /s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE

---

[1] The Court will not dictate how the record should be developed, but will note that either providing the medical evidence at Exhibits 14F, 15F, and 16F to one of the consultative examiners who already evaluated this issue, or getting an entirely new consultative examination with the benefit of this evidence, would suffice.